T.C. Summary Opinion 2006-191


UNITED STATES TAX COURT


ARIC MANLEY ALLMAN, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21588-05S.              Filed December 19, 2006.


Aric Manley Allman, pro se.

Edward L. Walter, for respondent.


GOLDBERG, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $989 for taxable year 2003. The issues for decision with respect to the taxable year at issue are: (1) Whether petitioner failed to report interest from Nationwide Life Insurance Company in the amounts of $16 and $11; (2) whether petitioner failed to report compensation in the amount of $3,497; and (3) whether petitioner is liable for self-employment tax.

## Background

Some of the facts are stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. At the time the petition was filed, petitioner resided in Lebanon, Ohio.

During taxable year 2003, petitioner was employed by AquaProof, Inc. (AquaProof), a company that specializes in foundation repair, waterproofing basements, and installing drainage systems. Petitioner earned $17,539.42 from AquaProof in 2003. The Form W-2, Wage and Tax Statement, issued by AquaProof shows that Federal income tax and Social Security taxes were withheld from his wages.

On or about November 17, 2003, petitioner was fired from his job at AquaProof. The next day, petitioner began working for Albert McMickle (Mr. McMickle), who owns a construction company that specializes in framing new homes. In that job, petitioner built and erected the load-bearing structural elements of a

house.  Petitioner worked for Mr. McMickle from November 18, 2003, until the first week of January 2004.  Petitioner also took unpaid time off in November and December for the Thanksgiving and Christmas holidays.

In his new job, petitioner received the same salary he earned at AquaProof ($12.50 per hour).  There was no written employment contract between petitioner and Mr. McMickle.  Petitioner did not receive any benefits, such as health insurance or vacation time.  Petitioner worked together with Mr. McMickle and other workers.  Petitioner was paid by cash weekly each Friday.  Petitioner worked no more than 27 days during 2003 for Mr. McMickle.

In early January 2004, however, petitioner realized that the wages he was receiving from Mr. McMickle were insufficient to meet his bills.  Petitioner thereafter quit his job.  Sometime in February or March 2004, petitioner returned to work for AquaProof.

Although petitioner provided his Social Security number to Mr. McMickle at the start of his employment and signed a "tax form", he never received a Form W-2 or any other tax information from Mr. McMickle for taxable year 2003.  Petitioner filed a Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, for the 2003 tax year on which he reported the income

received from his employment with AquaProof. Petitioner did not report any income derived from his employment with Mr. McMickle.

Mr. McMickle reported to the Internal Revenue Service on a Form 1099-MISC, Miscellaneous Income, that petitioner received nonemployee compensation in 2003 of $3,497. For the 2003 taxable year, Nationwide Life Insurance Company (Nationwide) also reported on a Form 1099-INT, Interest Income, that petitioner received interest of $16 and $11. Petitioner did not report these amounts on his Form 1040EZ for 2003.

### Discussion

1. Income from Nationwide Life Insurance Co.

Gross income includes all income from whatever source derived unless excluded by a specific provision of section 61(a). Notably, gross income includes interest and dividends. Sec. 61(a)(4).

Generally, the taxpayer bears the burden of proving the Commissioner's determination is erroneous. Sec. 7491(a); Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The issue we must resolve in this case is whether respondent may rely solely upon information provided by a third-party payer in making a determination.

Respondent determined that petitioner received interest of $16 and $11 in taxable year 2003 from two separate insurance policies based solely on the information contained on Forms 1099-

INT as provided by Nationwide. Petitioner disagrees with respondent's determination.

Although not raised by the parties, under section 7491(a), the burden of proof with respect to any factual issue will shift to respondent if petitioner's testimony with respect to the issue is credible. At trial, petitioner testified that the life insurance policies were owned by his father, despite their having his Social Security number on them, and that he neither owned, nor knew himself to be a beneficiary, of either one of the policies at issue. Petitioner further stated that he did not recall making any type of premium payments to Nationwide Life Insurance Company, and that he did not receive any income from either of the policies during the taxable year at issue. Petitioner also testified that his parents never indicated to him that they had purchased a life insurance policy on his behalf. According to petitioner, the only insurance that he had was through AquaProof and that was with an entirely different insurance company. Respondent, who has the burden of production as to this issue pursuant to section 6201(d), offered no evidence to rebut petitioner's testimony, which we find credible.

We accordingly conclude that petitioner did not receive any income from Nationwide in taxable year 2003, and that if he did have any interest in the policies it was, at best, as a nominee

and not as a beneficiary or owner.  Accordingly, we hold for petitioner with respect to this issue.

## 2.  Reported NonEmployee Compensation

Petitioner does not dispute that he received compensation from Mr. McMickle for 2003.  Petitioner, however, disputes the total amount of $3,497 reported by Mr. McMickle as nonemployee compensation.  He disagrees with the Commissioner's determination that he failed to report $3,497 in 2003, and argues that the determination is based solely on information erroneously filed by a third-party payor.

Under section 7491(a), the burden of proof with respect to any factual issue shifts to the respondent if the petitioner introduces credible evidence with respect to that issue. Moreover, under section 6201(d), if a taxpayer asserts a "reasonable dispute" with regard to income reported by a third party, respondent must produce reasonable and probative information regarding the source of income derived.  See Gussie v. Commissioner, T.C. Memo. 2001-302.

At trial, petitioner testified that he worked only from November 18, 2003, through the end of December for Mr. McMickle (27 days), taking into account the Thanksgiving and Christmas holidays.  Petitioner stated that he earned roughly $1,800 during that period.  Petitioner's estimate is based on his belief that he worked between 30 to 35 hours per week at $12.50 per hour.

Although petitioner was paid by cash without a receipt, and could not produce documentation to support his testimony, we nonetheless find his testimony as to the maximum number of days and hours worked to be truthful and accurate.

If the Form 1099-MISC provided to respondent by Mr. McMickle were to be believed, which reported $3,497 of nonemployee compensation, petitioner would have then worked approximately 280 hours during the period at issue. If true, this would mean that petitioner worked 40 hours a week for 7 weeks. We calculate that based on petitioner's credible testimony, that he could have worked no more than 140 hours for Mr. McMickle (35 hours multiplied by 4 weeks). We also believe that petitioner took 1 week off for Thanksgiving and Christmas each, resulting in a 4-week period of work in 2003. We find that petitioner worked no more than a 35-hour week with Mr. McMickle for 4 weeks for a total of 140 hours, earning a total of no more than $1,750 (140 hours multiplied by the rate of $12.50 per hour).

Respondent did not call Mr. McMickle as a witness in order to rebut any of petitioner's testimony. On all of the facts presented, petitioner has persuaded us that respondent's determination based on the information provided by Mr. McMickle is erroneous. Accordingly, we conclude that petitioner failed to report compensation received from Mr. McMickle in the amount of $1,750 for taxable year 2003.

3. <u>Self-Employment Tax</u>

Section 1401 imposes a percentage tax on self-employment income of every individual.  See <u>Jackson v. Commissioner</u>, 108 T.C. 130 (1997).  Self-employment income is defined as "the net earnings from self-employment derived by an individual * * * during any taxable year".  Sec. 1402(b).  The term "net earnings from self-employment" is defined as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions * * * which are attributable to such trade or business".  Sec. 1402(a).

For purposes of the self-employment income tax, a "trade or business" has the same meaning as when used in section 162, except that it does not include the performance of service by an individual as an employee.  Sec. 1402(c)(2).[1]  The definition of an employee applicable to this case is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".  Sec. 3121(d)(2); see sec. 1402(d).

---

[1] See also sec. 1.1402(c)-3(a), Income Tax Regs., which provides as follows: "the performance of service by an individual as an employee, as defined in the Federal Insurance Contributions Act (chapter 21 of the Internal Revenue Code) does not constitute a trade or business within the meaning of sec. 1402(c) and sec. 1.1402(c)-1".

The question of whether an individual performs services for another as an employee or independent contractor is generally considered a question of fact. Packard v. Commissioner, 63 T.C. 621, 629 (1975). This Court has enumerated seven factors that should be considered in determining whether an individual is a common law employee: (1) The degree of control exercised over the details of the work; (2) the individual's investment in the work facilities; (3) the individual's opportunity for profit or loss; (4) whether the work is part of the principal's regular business; (5) the principal's right to discharge the individual; (6) the permanency of the relationship; and (7) the relationship the parties think they are creating. Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988). These factors are not weighted equally but must be evaluated according to their significance in each particular case. Teschner v. Commissioner, T.C. Memo. 1997-498.

Although no one factor is controlling, the most fundamental is the degree of the principal's control over the details of the work. Packard v. Commissioner, supra. Generally the common law employer-employee relationship exists when "the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and

means by which that result is accomplished." Sec. 31.3121(d)-1(c)(2), Employment Tax Regs.; see also Gamal-Eldin v. Commissioner, T.C. Memo. 1988-150, affd. without published opinion 876 F.2d 896 (9th Cir. 1989).

Petitioner takes issue with respondent's determination that he is required to pay self-employment tax for the 2003 taxable year. The Commissioner's determination is based solely on Mr. McMickle's reporting of income paid to petitioner on a Form 1099-MISC as nonemployee compensation. According to petitioner, he was an employee of Mr. McMickle and not an independent contractor. As support for his position, petitioner testified with respect to his work for Mr. McMickle.

According to petitioner, Mr. McMickle instructed him what to do when he reported to work and while on the job. Petitioner explained that Mr. McMickle worked through a foreman who, in turn, supervised four individuals, including petitioner. Petitioner believed that Mr. McMickle would provide him with "a 1099, or W-2, at the end of the year, whatever they send you".

We construe respondent to believe that petitioner is liable for self-employment taxes because the amounts he earned from Mr. McMickle were income derived from petitioner's trade or business as an independent construction worker. We disagree.

Petitioner understood himself to be a full-time, hourly employee of Mr. McMickle during 2003. Petitioner worked for Mr.

McMickle "under the table", which explains the lack of withholding for taxes and Social Security. Petitioner testified that Mr. McMickle owned the construction company and controlled the details of when and how the work was to be performed at the various project locations. Mr. McMickle determined the hours to be worked by the employees, including petitioner. There is nothing in the record that indicates that petitioner was responsible for profits or losses with respect to the rough framing activity. Moreover, the record does not indicate that petitioner was responsible for his own work expenses or that he was required to purchase his own tools for use on the job. Petitioner never signed a contract with Mr. McMickle or anybody else with respect to the various rough framing projects that indicated that he was an independent contractor. Mr. McMickle could terminate petitioner at any time. We find petitioner's testimony credible.

Again, we note that respondent failed to rebut petitioner's testimony because he did not call Mr. McMickle as a witness. Based on the facts before us, and in light of the factors enumerated above, we find that petitioner was an employee during 2003. Accordingly, petitioner is not subject to self-employment tax. Petitioner is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered
under Rule 155.